CLIPPINGER *v.* STARR.

1. Partnership—Payment of Individual Debts.
    One partner cannot pay his individual debt, or the debts of others, out of partnership funds, without the consent of all the partners.

2. Same—Implied Contract—Loan—Payment.
    Plaintiffs were partners, and one of them, who was agent for a firm of stock brokers, paid defendant the amount due him from the stock brokers out of partnership funds belonging to plaintiffs, with the understanding that the brokers would remit the amount to plaintiffs. The brokers sent plaintiffs their check, including the sum paid defendant, and also the balance due plaintiffs, but the check was protested. The other partner soon after learned of the transaction, but no demand for repayment from defendant was made until after five months. In the meantime the brokers had become insolvent. *Held:*
    (1) That the transaction was not a loan, as there was no express or implied promise to pay the money back to plaintiffs.
    (2) That the failure to seasonably notify defendant of the protest of the check, and that they would hold him responsible for the unauthorized payment of partnership funds, prevented a recovery by plaintiffs.

Error to Ingham; Wiest, J. Submitted April 8, 1902. (Docket No. 20.) Decided May 8, 1902.

*Assumpsit* by Harvey Clippinger and Charles Clippinger, copartners as Clippinger & Co., against Marshall Starr, for money had and received. From a judgment for defendant on verdict directed by the court, plaintiffs bring error. Affirmed.

Plaintiffs were copartners doing business in the city of Lansing. The firm of A. J. Clark & Co., which consisted of A. J. Clark and one Evarts, kept a bucket shop in Detroit, with a branch office at Lansing. They had a private telegraph wire between the Detroit and Lansing

offices.　The office at Lansing was in the charge of plaintiff
Harvey Clippinger.　Defendant had dealt with A. J.
Clark & Co. in Detroit, and, desiring to have his trans-
actions there closed out, went to the office in Lansing, and
requested Mr. Harvey Clippinger to wire to the office in
Detroit, and ascertain what amount was coming to him.
Mr. Clippinger did so, and received reply from the Detroit
office that they would send the information in the after-
noon.　Defendant returned to the Lansing office at the
appointed time, and Mr. Clippinger informed him that the ·
amount due him was $435.62.　Defendant asked for pay-
ment, and Mr. Clippinger gave him a check, signed,
"Clippinger & Co.," for $435.62, upon the City National
Bank of Lansing, upon which defendant received the
money.

Mr. Clippinger's version in regard to the giving of the
check is as follows:

"I told Mr. Starr then that I did not have any of A. J.
Clark's money; that I would pay him a check; and so
recorded it to Detroit that I paid Mr. Starr, or, rather,
gave him a check for the amount,—$435.62.

"*Q.* What did Mr. Starr say, if anything, about the
fact that you did not have any money, when you said you
did not have any money?

"*A.* Why, he said, 'You are doing business with Clark
& Co., and you are receiving your letters,' and they could
remit the amount with my letters at the same time."

On cross-examination Mr. Clippinger testified that he
had $300 or more of A. J. Clark & Co.'s money when de-
fendant applied to him in the morning, and that that
money was to be used in paying the home trade; that he
had paid out this money before defendant came back in the
afternoon; that A. J. Clark & Co. sent Mr. Clippinger a
check for $939.86, which included the amount paid by
plaintiffs to the defendant; that A. J. Clark & Co. were
insolvent; that, at the expiration of five months, Mr. Har-
vey Clippinger, having failed to obtain payment from A.
J. Clark & Co., notified defendant to return the money he
had received; that all the business in connection with this
transaction was carried on through the Clippinger & Co.

bank account; and that plaintiff Charles knew about the transaction soon after November 6th, but never made any demand on the defendant.

The defendant's version of the transaction is that Mr. Harvey Clippinger, on ascertaining the amount due defendant, told him that he would pay it, and gave him the firm check in payment therefor.

This suit was commenced by the issuing of a summons March 16, 1901, in the name of Harvey Clippinger as sole plaintiff. Issue was duly joined, and the case noticed for trial at the September term, 1901. On October 12, 1901, the declaration was amended by making Charles Clippinger a party plaintiff to the suit. The declaration alleges that the "defendant requested Harvey Clippinger to advance the money due him, saying that, when A. J. Clark & Co. forwarded the money to him (Clippinger), he could retain it for the money so advanced or turned over to him." The court directed a verdict for the defendant.

*L. B. & H. M. Gardner*, for appellants.

*Montgomery & Clark*, for appellee.

GRANT, J. (*after stating the facts*). Plaintiffs' evidence does not support the theory of the special count in their declaration. The money paid to defendant by Harvey Clippinger was not an advance or a loan. It was not paid to him upon any promise, express or implied, to pay it back. The check was given as a payment for the money due from A. J. Clark & Co. to defendant by Mr. Clippinger, who was in charge of A. J. Clark & Co.'s business at Lansing, and who was their agent, and not in any sense the agent of defendant.

The rule is well established that one copartner cannot use the partnership funds in payment of the individual debt of a partner, or the debts of others, except by the assent, express or implied, of all the partners. Plaintiff Charles almost immediately had knowledge of the issue of the firm check to the defendant, and its payment. It was

his duty to move promptly in repudiating the transaction. He failed to do so for nearly a year. By this course he must be held to have ratified it. Silence for so long a time, with full knowledge of all the facts, is a ratification, and precludes the partnership from suit to recover the money. Undoubtedly Harvey gave defendant the firm check in payment, supposing that his principals, Clark & Co., would promptly reimburse him. They did promptly send him their check in payment, but they had no funds in bank to meet it, and the check was protested. If Harvey or Charles had moved seasonably in notifying defendant of the protest, and that they should hold him responsible for the unauthorized payment by Harvey, defendant would undoubtedly be liable. *Casey* v. *Carver*, 42 Ill. 225; *Marine Co.* v. *Carver*, Id. 66; *Johnson* v. *Crichton*, 56 Md. 108; Story, Partn. § 133. Defendant was entitled to prompt notice of repudiation by the plaintiffs, in order that he might proceed seasonably against his debtors, Clark & Co.

Judgment is affirmed.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred. LONG., J., did not sit.